IN RE SPECIAL ASSESSMENT JEFFERSON STREET SEWER.

MUNICIPAL CORPORATIONS:   Public Improvements—Legislative
1   Act in Ordering—Review by Courts—Non-assessment—Over-
 assessment.   The legislative act of a city in *ordering* a sewer
raises a conclusive presumption that the property within the
legal zone of the improvement will, *in some degree,* be benefited.
It follows that the cry of over-assessment will be entertained by
 the court—not a denial of *any* assessment.

MUNICIPAL CORPORATIONS:   Public Improvements—Assessments
2   —Nature of Benefits Recognized.   Principle recognized that
benefits flowing from public improvements, and for the cost of
which assessments are authorized, need not be *present* and *im-
mediate.*

APPEAL AND ERROR:   Reversal—Public Improvements—Special
3   Assessments—Absence of Evidence as to Benefits.   On an appeal
from an order *wholly* cancelling a sewer assessment because the
trial court improperly assumed to find that the property would
receive no benefit, the cause, in the absence of evidence as to
the proper amount of benefits, will be reversed for hearing on
such omitted matter.

*Appeal from Black Hawk District Court.*—GEORGE W.
DUNHAM, Judge.

FRIDAY, APRIL 6, 1917.

THIS action, tried as in equity in the district court, is
an appeal from a decree of the district court of Black Hawk
County, Iowa, rendered on the 6th day of October, 1914, can-
celling a special assessment against Lots 1, 2, 3, 4 and 5 in
Block 42, Lots 1, 2, 3, 4 and 5 in Block 55, Lots 6, 7, 8, 9
and 10 in Block 58, Lots 6, 7, 8, 9 and 10, in Block 59,
all in Baker's Addition to West Waterloo, Iowa, levied
by the city council of the city of Waterloo, for the con-
struction of a combined storm and sanitary sewer along
Jefferson Street in said city and in front of the said lots,
as a part of a general sewerage system and improvement

to the said city. Several objections were filed, but it seems to be conceded by counsel on either side that the sole issue upon which the case was tried was a question of benefits under one of the objections, which is as follows:

"That the objectors received no benefit because of the construction of said sewer, for the reason that a sewer had heretofore been constructed along the said street, and same was sufficient for all abutting and adjacent property owners; that said new sewer was constructed for the express purpose of taking care of storm water and carrying same from the intersection of Eleventh and Jefferson Streets, said storm water not having interfered with or been offensive to the objectors, the owners of the property in question; that the new sewer was not needed by your objectors, or any of them, and is not a benefit to them or any of them on account of their having used the old sewer heretofore referred tc, which said old sewer was sufficient in every respect for the needs and uses of your objectors."

The contention of the abutting property owners was that the construction of the improvement did not benefit their property in any amount. The trial court found for the objectors, and canceled the assessment. The city appeals.—*Reversed and Remanded.*

*Alfred W. Mullan,* for appellant.

*H. B. Boies, E. J. Wenner* and *Mears & Lovejoy,* for appellees.

PRESTON, J.—On October 2, 1912, the city of Waterloo entered into a contract for the construction of a combined storm and sanitary sewer, 24 inches in diameter, from Eleventh Street to Thirteenth Street on Jefferson Street, it being found that the existing sewer, 12 inches in diameter, along the said street was inadequate and insufficient for the needs of the property owners and of the city. The begin-

ning of the sewer on Eleventh Street is about 7 blocks from the center of the business district of West Waterloo, and both Eleventh and Jefferson Streets are paved with asphalt paving at this point.    It appears that, some 12 years before, a 12-foot sewer, known as the Dry Run Sewer, had been constructed in the vicinity, but this is not in controversy in this case.    Various sewers along the course of the Dry Run Sewer empty into it.    It is contended by appellees that this large sewer was a storm sewer primarily, and relieved conditions in that part of the city from annoyances due to surface water, and that the properties in question in this case were not affected by surface water after the Dry Run Sewer was constructed, except Manning's store, and it is contended that, as to this last named property, the water at the Manning corner caused just as much damage to that property after the completion of the new 24-inch sewer as before it was constructed, and there is evidence to that effect.    Appellee contends, also, that no other property on Jefferson Street between Eleventh and Thirteenth was ever flooded or interfered with by freshets or surface water except the Manning store, and they say the Manning property had in the rear an old stone quarry or cellar hole, which, at time of freshets, usually filled with water.    Manning's corner is near the intersection of Jefferson and Eleventh Streets, and is west or northwest of the other properties in controversy. Prior to the construction of the sewer in question, a 12-inch sewer had been laid along this same street, with which all property owners had connected, or had a right to connect, for sewer privileges.    The new sewer was constructed parallel with the 12-inch sewer along the same street.    The assessments complained of are for the cost of this second sewer against the abutting property.    It is contended by appellees, and seems to be conceded by appellant, that the 12-inch sewer was fully adequate for all sanitary purposes, but appellant contends that it was inadequate for even or-

dinary rains, and failed to carry off storm water and surface water, and, in view of this fact, and to relieve the flood conditions at this point, the city council authorized the construction of a larger and more adequate sewer.

The appellees claim that the new sewer was a duplicate service, and that they received no benefit from the construction of the second sewer. Appellees further contend that the only purpose of the 24-inch sewer was to carry off the water that collected on the Manning property, and, because it was claimed that the 24-inch sewer would relieve the condition at Manning's, the city claims that all properties between Eleventh and Thirteenth Streets would be benefited. And they claim that the new 24-inch sewer did not relieve storm conditions at the Manning corner; and appellant concedes that, in two or three instances, when there were heavy rainfalls, which appellant calls cloudbursts, the new sewer was not adequate, but claim that, conceding this to be true, still this fact does not make the improvement the less a benefit.

The entire cost of the new 24-inch sewer was $3,128.87, of which $1,800 was assessed against all of the lots abutting on said improvement, and, as the city claims, in proportion to the special benefits accruing to each lot within the two blocks; and the balance of the $3,128.87 was paid for out of the West Side Sewer Fund. The 20 lots between Eleventh and Thirteenth Streets were assessed $90 each, which, according to the assessment plat prepared by the city engineer, as we understand it, was the cost of the construction in front of each 60-foot lot, or rather, its full proportion of the $1,800 which was assessed against all the lots.

The new sewer was constructed in accordance with the plans and specifications prepared by the city engineer for sewers throughout the city of Waterloo, and was inspected by him during its construction, and it empties into a 36-inch sewer which flows into Cedar River on Thirteenth Street,

being a connecting link in the general sewerage system of the city. Appellees contend that the new sewer only relieved, or partly relieved, the condition at Manning's corner. The old stone quarry referred to, near Manning's, was later a part of the channel of what was known as Dry Run.

1. MUNICIPAL
CORPORATIONS:
public improve-
ments: legis-
lative act
in ordering:
review by
courts: non-
assessment:
over-assess-
ment.

1. It is argued by appellant that the action of the city council in ordering the sewer and making the assessment is a legislative determination, with which the courts may not interfere. As pointed out in *Mittman v. Farmer*, 162 Iowa 364, at 371, there is some conflict in our own cases as to just how far these matters are a legislative function. We apprehend that it should be held more strictly so as to the ordering in of the improvement and that it is some benefit, rather than as applied to the amount of the assessment. Necessarily, there are some questions for the court; among them, questions as to the regularity of the procedure by the council, the equality of the assessment and whether it is more than the 25 per cent authorized by law, and perhaps some other questions.

In the recent case of the *Chicago, R I. & P. R. Co. v. City of Centerville*, 172 Iowa 444, a paving case, decided since the trial of the instant case in the district court, Mr. Justice Weaver, speaking to this point, said:

"This discretion includes the authority to assess such cost upon the abutting property, in proportion to the benefits accruing to such property. It follows, we think, that the order of the city council, acting in accordance with the statute for the paving of the street and assessment of the cost upon abutting property, is not subject to control or interference by the courts; and (still assuming that the provisions of the statute have otherwise been observed) the question to be considered, upon an appeal from the assess-

ment made, is whether the burden has been distributed or apportioned upon the several items of abutting property with due reference to the benefits they derive from the improvement. In other words, the action of the council, in ordering the pavement and providing that the cost shall be assessed upon the abutting property, is a legislative determination that the improvement is expedient and proper, and that the property abutting upon the improvement will be benefited thereby; and such determination cannot be set aside or overruled in a judicial proceeding. This is not inconsistent with the right of the property owner to question and have determined the regularity of the procedure by the council and the equality of the assessment. In other words, while the owner of abutting property may object that it has been over-assessed, he cannot, if the proceedings have otherwise been regular, be heard to say that it is not liable to be assessed at all."

2. MUNICIPAL CORPORATIONS: public improvements: assessments: nature of benefits recognized.

Under the ruling in that case, it must be held, we think, in the instant case, that the properties of appellees did receive some benefit. It may not be as much as was assessed by the council. The benefit may not be realized until some time in the future. A sewer of this character is necessarily permanent, and built for the future, as well as for the present. The evidence shows that the city is growing, and this sewer is near the business part of West Waterloo. The old or 12-inch sewer may become inadequate in the course of a short time. As we understand it, the order of the council providing for the construction of the new sewer provides for the construction of a combined storm and sanitary sewer, so that it may be necessary to use the new sewer for sanitary purposes.

Some 13 of the witnesses for appellees

**3. APPEAL AND ERROR: reversal: public improvements: special assessments: absence of evidence as to benefits.** testify that the new sewer did not increase the market value of their properties, and was of no benefit thereto. Witnesses for appellant say that, in their opinion, the properties were benefited by the improvement. At least one witness for appellees admits that the new sewer is a benefit to the properties, and, as pointed out in the *Centerville* case, there is a presumption that the properties are benfited to some extent. While the witnesses for appellant say that the improvement was of some benefit, there is no attempt by any of them to state how much the different properties are benefited; that is, whether to the full amount assessed or a lesser amount. For this reason, we are unable to determine here just what assessment ought to be made.

We deem it unnecessary to refer further to the testimony upon either side, but, from the record, our conclusion is that there should be some assessment against these properties, but, because of the condition of the record, the cause is reversed and remanded for the purpose of determining the amount of the assessment against each property.—*Reversed and Remanded.*

GAYNOR, C. J., WEAVER and EVANS, JJ., concur.