IOWA PIPE AND TILE COMPANY, Appellant, v. JAMES CALLANAN, Appellant, and CITY OF DES MOINES, IOWA.

**Special assessments in excess of benefits.** The assessment of property abutting on a street to defray the cost of a sewer, in "substantial excess" of the benefits to the property, as shown in this case, is invalid. Following Norwood v. Baker, 172 U. S. 269.

**Equitable relief:** TENDER. Where an entire assessment of abutting property is invalid because in excess of substantial benefits, it is not necessary for the owner to tender any portion of the assessment as a condition precedent to equitable relief.

**Special assessments:** LIABILITY OF CITY. Where an assessment against abutting property for a street improvement, though made pursuant to an ordinance, was void, but the work had been properly done under the contract and the city had received the benefit, a provision in the assessment certificates that the same should be received by the contractor in full payment for the work, did not relieve the city from liability on account of the invalid assessment.

**Special assessments:** NOTICE. Different municipal improvements may be legally noticed in the same assessment notice.

*Appeal from Polk District Court.*— HON. C. P. HOLMES, Judge.

TUESDAY, OCTOBER 25, 1904.

SUIT in equity to foreclose three assessment certificates issued by the city of Des Moines for the construction of a sewer on Tenth Street, and asking a personal judgment against the appellant Callanan and a judgment against the city of Des Moines. The undisputed facts in the case are substantially as follows: The appellant Callanan was the owner of lot nine in blocks one, two and three in an addition to the city of Des Moines. The lots were originally each

thirty-three feet wide and one hundred feet long.    After his purchase thereof, the city condemned twenty-five feet in width off of the west side of each of the lots for the purpose of opening Tenth street, leaving three strips of ground each eight feet wide, and each abutting said street their full length, one hundred feet.    Thereafter a sewer was built on Tenth street, and the lands abutting thereon were assessed to pay for it according to the frontage of the lots.    Before the assessment was made, however, Mr. Callanan sold a strip five feet wide off of the east side of one of the lots.    Each of these three strips of ground was assessed on the basis of its frontage on the street, each an equal amount, and each the same amount per front foot that was assessed to lots on the same street having a depth east and west of from one hundred and twenty to one hundred and seventy-five feet. The answer of Mr. Callanan alleges that the strips of ground are not and cannot be benefited by the sewer; that they were assessed as though they were full lots, equal in value to other full-sized lots along the street benefited by the sewer; that such assessment is inequitable and unjust, and in violation of the Constitution of the United States, in that his property is taken without due process of law.    There was a trial, and a personal judgment against Mr. Callanan for the full amount claimed, with interest, and the suit against the city was dismissed.    Mr. Callanan and the plaintiff appeal.— *Reversed.*

*Dudley & Coffin,* for appellant *James Callanan.*

*A. P. Chamberlain,* for appellant *Iowa Pipe & Tile Co.*

*W. H. Bremner,* for appellee.

SHERWIN, J.— The assessment in this case is so manifestly unequal and unjust, and is so clearly governed by the rule announced by the Supreme Court of the United States in *Norwood v. Baker,* 172 U. S. Rep. 269 (19 Sup. Ct. 187, 43 L. Ed. 443), that we are constrained to hold it invalid.

This court has uniformly upheld the frontage rule of assess-

1. SPECIAL AS-
SESSMENTS IN
EXCESS OF
BENEFITS.

ment, regardless of the special benefit to the property, the latest pronouncement on the subject being in *Hackworth. v. City of Ottumwa,* 114 Iowa, 467, and, were it not for the controlling force of the Norwood-Baker Case, we should perhaps feel bound to follow the rule in this case. It should be said, however, that in no case involving this question upon which we have heretofore passed, have the facts been similar to those before us now, and hence we have never before been called upon to determine the precise question involved here. It is true that we have sustained front-foot assessments regardless of benefits and justified the power on the ground of the right of taxation for the public good. *Warren v. Henly,* 31 Iowa, 31, and cases following the rule there announced. But in none of the cases was there such a showing of inequality in the assessment as to make it clearly appear that the assessment could not possibly be just. On the contrary, in none of the cases, as we now recall them, was there a showing of any special inequality, or at least no greater inequality than would inevitably exist under any rule of taxation. In *Amery v. The City of Keokuk,* 72 Iowa, 703, the only question was whether the lot owner was entitled to notice of the assessment of the tax, but in a general discussion of the case it was said " that all that was required was the lineal measurement of the front of the lots   *. *  *   abutting on the street.   *  *  *   There was no authority to institute an inquiry as to how far back from the street the rights of the abutting owner extended." There was, however, no showing of inequality in that case. The lots in question were originally of such size as to be valuable for business or residence purposes, but after the city had taken therefrom twenty-five feet for street purposes, the remaining strips of ground manifestly had no value for purposes of improvement, and could only be used in connection with the lots adjoining them on the east; and, if the adjoining owners did

not want them, they would be useless, and practically without any market value.   It is doubtful whether the Legislature in conferring upon municipalities the power to assess lots and parcels of land for such improvements, ever intended it to be exercised arbitrarily and in utter disregard of the principles of equality and justice upon which our laws are supposed to be founded.

But, however this may be, and whatever independent conclusion we might reach in this particular case in view of our former holdings, is of little consequence if it be true that this case is controlled by the Norwood-Baker Case.   The profession is familiar with the issues and facts in that case, but there may be some question as to the extent to which the opinion of the majority goes.   In the second edition of Elliott on Roads and Streets, section 558, it is said, speaking of the Norwood-Baker Case:  " But the Supreme Court of the United States has recently held that an assessment in substantial excess of the special benefit is invalid, and that the power of the Legislature in such matters is not unlimited. The actual decision in the case   *·  *·  *   does not go so far as it has sometimes been supposed to go.   *   *   *   We think it is clearly an authority to the effect that a particular assessment is invalid where it is in substantial excess of the benefits, and there is no right to a hearing on which it can be changed, especially where it is physically impossible that the particular property can be benefited to such an extent." And the author adds:  " But it does not necessarily follow that the statute itself is unconstitutional merely because it lays down a general rule for determining the special benefits in the first instance, whether by frontage or by any other proper system."   In the Norwood-Baker Case it is said: " The plaintiff's suit proceeded upon the ground, distinctly stated, that the assessment in question was in violation of the fourteenth amendment, providing that no State shall deprive any person of property without due process of law, nor deny to any person within its jurisdiction the equal pro-

tection of the laws, as well as the Bill of Rights of the Constitution of Ohio." The land taken for the street in the Norwood-Baker Case as in this case, was taken under the power of eminent domain, but in that case valuable tracts of land were still owned by Mrs. Baker on both sides of the street, while here practically nothing was left to the owner.

Speaking of the power of the Legislature in that case, Mr. Justice Harlan said:

But the power of the Legislature in these matters is not unlimited. There is a point beyond which the legislative department, even when exercising the power of taxation, may not go, consistently with the citizen's right of property. As already indicated, the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired if it were established as a rule of constitutional law that the imposition by the Legislature upon particular private property of the entire cost of a public improvement, irrespective of any peculiar benefits accruing to the owner from such improvement, could not be questioned by him in the courts of the country. It is one thing for the Legislature to prescribe it as a general rule that property abutting on a street opened by the public shall be deemed to have been specially benefited by such improvement, and therefore should specially contribute to the cost incurred by the public. It is quite a different thing to lay it down as an absolute rule that such property, whether it is in fact benefited or not by the opening of the street, may be assessed by the front foot for a fixed sum representing the whole cost of the improvement, and without any right in the property owner to show, when an improvement of that kind is made, or is about to be made, that the sum so fixed is in excess of the benefits received. In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation. We say " substantial excess," because exact

equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment.

In *French v. Asphalt Paving Co.*, 181 U. S. Rep. 324 (21 Sup. Ct. 625, 45 L. Ed. 879), there is a general review of the adjudications on the subject, and the following quotation from 2 Dillon, Municipal Corporations (4th Ed.) section 752, is cited with approval, and may be said to express the view of the majority of the court: " The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power, or included within it. * * * Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefited, and, if the latter mode, whether the assessment shall be upon all property found to be benefited or alone upon the abutters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency." This rule, it will be seen, fully recognizes the principle that the assessment must be made on the theory of special benefits to the property assessed, whether all property benefited be assessed or not. This is apparent not only from the language used, but from the same author's views expressed in section 761 of the same work, where he says:

Special benefits to the property assessed — that is, benefits received by it in addition to those received by the community at large — is the true and only just foundation upon which local assessments can rest, and to the extent of special benefits it is everywhere admitted that the Legislature may authorize local taxes or assessments to be made. When not restrained by the Constitution, of the particular State, the Legislature has a discretion commensurate with the broad domain of legislative power in making provisions for ascer-

taining what property is specially benefited, and how the benefits shall be apportioned. This proposition, as stated, is nowhere denied; but the adjudged cases do not agree upon the extent of legislative power. The courts which have followed the leading case in New York (*People ex rel. Griffin v. Brooklyn,* 4 N. Y. 419, 55 Am. Dec. 266) have asserted that the authority of the Legislature in this regard is quite without limits; but the decided tendency of the later decisions, including those of the courts of New Jersey, Michigan, and Pennsylvania, is to hold that the legislative power is not unlimited, and that these assessments must be apportioned by some rule capable of producing reasonable equality, and that provisions of such a nature as to make it legally impossible that the burden can be apportioned with proximate equality are arbitrary exactions, and not an exercise of legislative authority.

In the French Case the majority opinion distinguishes it from the Norwood-Baker Case as follows:

It may be conceded that courts of equity are always open to afford a remedy where there is an attempt, under the guise of legal proceedings, to deprive a person of his life, liberty, or property without due process of law. And such, in the opinion of a majority of the judges of this court was the nature and effect of the proceedings in the case of Norwood v. Baker. But there is no such a state of facts in the present case. Those facts are thus stated by the court of Missouri: " The work done consisted of paving with asphaltum the roadway of Forest avenue in the said city, thirty-six feet in width, from Independence avenue to Twelfth street, a distance of one-half mile. Forest avenue is one of the oldest and best-improved residence streets in Kansas City, and all the lots abutting thereon front the street and extend back therefrom uniformly to the depth of an ordinary city lot to an alley. The lots are all improved and used for residence purposes, and all of the lots are substantially on the grade of the street as improved, and are similarly situated with respect to the asphalt pavement. The structure of the pavement along its entire extent is uniform in character and quality. There is no showing that there is any difference in the value of any of the lots abutting upon the improvement.

As we have heretofore said, we are of opinion that this case is ruled by *Norwood v. Baker,* rather than by *French v. Asphalt Paving Co.,* and, following the former case, as we are bound to do, we must hold the assessment in this case invalid.

It is contended, however, that, even if the assessment be invalid, the court can grant no relief, because the owner of the property has made no tender of the amount which he 2. EQUITABLE RE- should pay. This contention is also best an- LIEF: tender. swered in the Norwood Case, where it is said: " The present case is not one in which — as in most of the cases brought to enjoin the collection of taxes or the enforcement of special assessments — it can be plainly or, clearly seen from the showing made by the pleadings that a particular amount, if no more, is due from the plaintiff, and which amount should be paid or tendered before equity would interfere. It is rather a case in which the entire assessment is illegal. In such case it was not necessary to tender, as a condition of relief being granted to the plaintiff, any sum as representing what she supposed, or might guess, or was willing to concede, was the excess of cost over benefits accruing to the property. She was entitled, without making such tender, to ask a court of equity to enjoin the enforcement of a rule of assessment that infringed upon her constitutional rights." The appellant Callanan claims that the land in question is valueless, and that it was physically impossible for it to be benefited by the sewer. It may be that he is in error on both of these questions, but, under the circumstances, we do not think he was bound to tender any sum before asking relief from the unjust imposition on his property. The judgment against him was wrong, and it is reversed.

The city issued to the plaintiff certificates for the amount assessed against the strips of ground, and the plain- 3. SPECIAL AS- SESSMENTS: tiff contends that, if the assessment was illegal liability of city. as to the land and its owner, the city is liable for the value of the work. There is no question as to the

facts in the case. The work was properly done under a contract with the city, which was authorized by law and by its ordinances, and the city has received all the benefits of the work. The contract between the plaintiff and the city contained these provisions:

Said cost is to be assessed as provided by the ordinances of said city, against the private property fronting or abutting on the street or streets upon which said improvement is made, and said assessment shall be payable within the time and in the manner as provided by an ordinance of the city relating to making contracts for paving and curbing streets and alleys, and the construction of sewers and providing for the manner of making and collecting assessments and issuing certificates for the payment thereof, passed February 22, 1889. And it is further agreed that the said assessment certificates shall be received by said Lennan & O'Brien in full payment and compensation for all work done by them under this contract and without recourse to the city of Des Moines.

And while we do not understand from the appellee's argument that it seriously denies the liability of the city in case the assessment is held invalid, there is a suggestion therein that the stipulation that the assessment certificates shall be received in full payment for all work done without recourse on the city relieves the city from all liability on account of its invalid assessment. This position is not tenable, however. The ordinance under which the work was done provided that the cost thereof might be taxed against the private property abutting on the street, and for making and collecting assessments, and for issuing certificates in payment therefor. The contract provided that the cost was to be assessed and paid as provided in the ordinance, but it was not contemplated by either party thereto that the city would make an assessment against abutting property which could not be enforced, and we think it must be held that the latter clause of the contract means nothing more than the acceptance of certificates which are legal, and representing an assessment valid and enforceable. Such was the holding, in

substance, in *Ft. Dodge E. L. & P. Co. v. City of Ft. Dodge,* 115 Iowa, 568, where the question was quite fully considered, and we think that case controlling here, and that the city is liable for the amount of the certificates. See, also, *Bucroft v. The City of Council Bluffs,* 63 Iowa, 646; *Scofield v. Council Bluffs,* 68 Iowa, 695.

The amendment to the abstract shows that the notice of the assessment in question related solely to a sewer, and 4. Special as- we know of no reason why other and different sessments: notice. improvements may not be legally noticed in the same document.

The case is reversed on both appeals.— *Reversed.*