MRS. WILLIAM BELL, Appellee, v. THE CITY OF BURLINGTON, Appellant.

GEORGE HARVEY, Appellee, v. THE CITY OF BURLINGTON, Appellant.

E. T. DANKWARDT ESTATE, Appellee, v. THE CITY OF BURLINGTON, Appellant.

**Municipal corporations:** CONSTRUCTION OF SEWERS: ASSESSMENT. The fact that a city constructed a sewer without expense to or the right of abutting property owners to connect therewith, will not deprive the city of power to construct a new system and assess the cost thereof to the property owners.

**Same.** The fact that a city so constructed a sewer that the outlet
2 was liable to create a nuisance will not affect the right of the
city to collect the cost of the sewer by special assessment, as
the duty rests upon the city to see that a nuisance is not created
and to abate one if it exists, and it may be compelled to perform
that duty.

**Same.** Where a sewerage system is designed to be available for the
3 removal of sewerage in general, and also for the purpose of
drainage of surface water, a court will not declare that the sys-
tem is unnecessary.

**Same.** The fact that there may be lots or blocks within a sewerage
4 district of such elevation that the surface water will flow off,
either onto adjoining lots or into the streets without a sewer,
does not determine that the sewer would be of no benefit to such
property; and since the general welfare and future prospects of
the city's growth and needs are to be considered the present
market value is not determinative of the question of benefit.

*Appeal from Des Moines District Court,* J. D. Smythe,
Judge.

Wednesday, March 13, 1912.

The foregoing cases are of a similar character, invol-
ving the validity of the same proceedings for special assess-
ment of the cost of a certain sewer, and will be disposed
of in a single opinion. The trial court held the assessments
invalid, and the city appeals. The material facts are stated
in the opinion. *Reversed.*

*Poor & Poor,* for appellant.

*La Monte Cowles,* for appellees.

Weaver, J. Barrett's addition to the city of Burling-
ton, or so much thereof as is affected by this litigation,
consists of a plat four blocks in width north and south and
six blocks in length east and west, and lies immediately
west of Madison avenue. This avenue is one of the main

thoroughfares in the southern part of the city, is paved, and has a street car service. Barrett's addition is largely occupied as a residence district; but its streets are not yet paved, and, except as hereinafter indicated, is unsupplied with any public system of sewerage or drainage. The evidence tends to show that nearly all this territory, or at least the major part of it, is naturally low and wet, and has no efficient natural or surface drainage. The soil is of a clay or gumbo composition, which holds the water falling upon that tract in pools, which tend to become stagnant. The most available outlet for drainage is into the head of a depression or waterway extending from a point on the east side of Madison avenue to the Mississippi river.

At some time after the platting of this addition, the city constructed a covered drain or sewer, beginning on the south line of Barrett's addition two blocks west of Madison avenue, running thence northeasterly across the west half of block 6, in which some of the property now in question is situated, into what is known as Denmark street, thence north on Tenth one block to Acres street; thence east on Acres one block to Madison, and across Madison into the outlet above mentioned. The lots owned by the plaintiffs Dankwardt and Harvey are in block 6, and the property of Mrs. Bell is located one block east on the northeast corner of block 7. These two blocks occupy the southeast corner of Barrett's addition. This sewer seems to have been built in sections, beginning at the outlet east of Madison, and extended from time to time as the streets in this part of the addition were opened and worked, and the necessity of drainage was thereby accentuated. The sewer was constructed by the city at its own expense, and no part of it was ever assessed against the adjacent or abutting property. Whether it was intended to serve any other purpose than to effect such drainage as might be necessary for the proper construction and use of the streets is not shown. There is evidence that some property owners in the vicinity have

made use of it for sewering their premises, though the authority for such action does not appear. The records of the city do not show that any permits for such connections have ever been asked or granted. The property of none of the plaintiffs has ever been connected with either the old sewer or the later one hereinafter mentioned.

In the proceedings now in question, the city has undertaken to cover Barrett's addition with a comprehensive sewer system, in which a main has been laid along Acres street from near the western limit of the addition eastward about five blocks to a connection with the old sewer near Madison avenue, and the old sewer is, to this extent, utilized as an outlet for the new. From the main sewer just described, laterals have been extended north and south through the alleys of all the blocks of the addition, thus making each lot abut at the rear upon a line of sewer. At each lot a "Y" has been laid to facilitate the work of making sewer connections. The system is provided with thirty manholes and thirty-four catch-basins, distributed over the territory to be accommodated. The work having been completed, and notice given of proposed assessment of the cost so incurred upon the property of the addition, the several plaintiffs above named appeared before the council and protested against any part of such expense being assessed upon their property. Their objections, briefly stated, were: (1) That there was irregularity in the proceedings by which the improvement was ordered. (2) That the sewer, as constructed, discharges into an open run, with the result that a nuisance has been or will be erected, making it impossible to use the sewer for sanitary purposes. (3) That assessment cannot be lawfully made upon the property for a storm sewer, because the proceedings of the city council did not provide for such a sewer. (4) That the assessments against the property are in excess of the benefits conferred, and in excess of the amount which can be legally levied for that purpose. The city council overruled the objections

so made, and levied a special assessment of about $32 on each of the lots, and from this assessment each of the plaintiffs appealed to the district court.

On the trial of the appeal, no effort appears to have been made to contest the regularity of the proceedings of the city council, and the entire attack upon the assessment was concentrated upon the proposition that, as to the several lots owned by the plaintiffs, there was no need of the new sewer; that said property was in no manner accommodated or increased in value therby; that said property and the immediate neighborhood thereof were already amply provided with drainage by the old sewer; and that the effect of the new system was or would be to create such a nuisance as would render said system of no value or benefit to the property. The trial court found for the plaitiffs, and canceled and set aside the assessments appealed from. Said decree is accompanied by no opinion or special findings; but we must presume that the conclusion was reached solely upon the merits of those objections in support of which evidence was offered. We shall therefore confine our own investigation and discussion within the same limits.

I. The existence of the old sewer was not of itself made the ground of objection to an assessment for the expense of the new one; and it is material only as an evidentiary fact bearing upon the situation of the property and upon the amount of benefits, if any, derived by the particular property from the improvement. It is not a case where, after property has once been included in a sewer district and subjected to a special assessment of that nature, and attempt is made to enforce another assessment of the same kind, without substantial change in conditions. The old sewer was put in by the city at its own expense, apparently with more reference to drainage of surface waters near the south line of the plat and the facilitation of street improvement than to the accommodation of lot owners desiring to

I. Municipal corporations: construction of sewers: assessment.

improve their property; and the fact that no one appears to have applied for leave to connect with it would indicate that such was the understanding of the people most directly interested. So far, therefore, as the situation is affected by the existence of the old sewer, we are unable to see how it limits the authority of the city to order the construction of the new one, or its power to assess the cost upon property benefited thereby. The old sewer, we repeat, was built by the city at its own expense and for its own purposes, and no property owner can rightfully make connection therewith without its permission. So far as appears from this record, it is entirely within the discretion of the city to forbid the use of the old sewer for the drainage of the lots and cellars of the property owners, and require all connections to be made with the new system, and should it so do no one could say he had been deprived of any personal or property right.

Nor can we understand how the fact, if it be a fact, that the outlet, if left in its present condition, is liable to create a nuisance, to the annoyance of those living or traveling in that vicinity, is a circumstance affecting the right 2. SAME.    or authority of the city to collect the cost of the sewer by special assessment upon abutting property. It is the business of the city to see that a nuisance is not created, or, if one is created, to abate it. If it fails in this respect, the courts of law and equity are open to compel the performance of that duty. Bearing upon this question: *Cone v. Hartford*, 28 Conn. 363; *Payne v. Springfield*, 161 Ill. 285 (44 N. E. 105); *Ryder v. Alton*, 175 Ill. 94 (51 N. E. 821).

Some complaint is made that a mere storm sewer is of no value to the property, and that this sewer is not available for sanitary purposes. The record of the proceedings in the city council are not before us; 3. SAME.    and it is not clear from what is presented whether the sewer was constructed exclusively for drainage of the surface waters. There is evidence tending to show that

it is so designed and laid as to be available for the removal of sewage in general. Except as to the alleged insufficiency of the outlet to carry the sewage to the river, there is no claim that the scheme is an engineering failure, or that it does not serve to drain the territory over which it is laid, or that any lot owner in the addition may not drain his premises by connecting with the lateral sewer in the adjoining alley. Under such circumstances, it certainly is not within the province of the court to say that this sewer system is so clearly unnecessary that its construction was an abuse of power by the city. Indeed, appellee, concedes that much of the addition was in need of such improvements; but the real contention in argument, when reduced to its final analysis, is that the lots owned by the plaintiffs and others in that immediate neighborhood are not benefited by the construction of this system, and therefore should not be subjected to asessment for any part of its cost. In support of this, we are cited to the existence of the old drain and to the alleged fact that these lots have some elevation above the general level of the addition, thus giving them sufficient natural drainage to carry away the surface water. Of the item first mentioned, the old drain, we have already spoken at considerable length, and little, if anything, more need to be said, and we need here only repeat that said drain was not built at the expense of the property owners, and there is no showing of any right on their part to make use of it for the drainage of their premises. There is nothing to indicate that the city may not at any time forbid its use for private purposes or wholly abandon it, without incurring liability therefor, so long, at least, as the new system is sufficient to afford all needed drainage.

Nor is the alleged elevation of these lots above the general level a matter of decisive importance. A sewer system is intended, not only for the private convenience of the lot owners, but for the comfort and safety of the public as well. It affords, not only a means of drainage from the

surface of privately owned lots, but drainage for cellars and for general sanitary purposes. It drains the public streets, removes stagnant pools which breed discomfort and disease, promotes general cleanliness, and in many other ways adds to the desirability, comfort, and real value of all property in the neighborhood which is thus served. If here and there a lot or block chances to have such elevation that the waters thereon soon flow off, then such waters are cast upon adjacent property or into the streets, to become a "common enemy" until they find discharge into some connection with the public drain or sewer. The improvement of the streets, the general removal of surface waters, the facilities for carrying away waste matter which would otherwise be cast upon the surface to poison the soil and pollute the atmosphere are benefits in which every property owner has some share; and the obligation of mutual burden bearing which rests upon the congested population of cities and towns requires that the expense of making them convenient, comfortable, and healthful shall, so far as practicable, be equitably distributed upon all property enjoying the benefit of municipal improvements.

The only remaining question is whether the record shows the sewer system to be so devoid of benefit to the plaintiff's lots that the assessments thereon should be vacated. Testimony was offered by the plaintiff,

4. SAME.

supported by the opinion of several intelligent witnesses, that these lots are worth no more with the sewer system established and completed than they would be without it. On the other hand, a somewhat larger number of witnesses, many of them property owners within the limits of the sewer district, are of the opinion that these lots, together with all the property of the addition, have received very material benefit therefrom. We think the preponderance of testimony upon this question is with the city. Indeed, taking the conceded situation of this plat of the city territory, it is difficult to believe that with the sewer

system reaching, as it does, every block and lot of the addition there is any one of them which does not now, and will not in the future, derive some substantial benefit therefrom. Increase or decrease in present market values is not a decisive test upon the question whether the property is benefited.   See *Camp v. Davenport,* 151 Iowa, 33, and cases there cited.   Future prospects and reasonable anticipations of the city's growth, expansion, and consequent needs may also be considered.   *Camp v. Davenport, supra; Railroad Co. v. Lindquist,* 119 Iowa, 146; *Downer v. Boston,* 7 Cush (Mass.) 281; *Dickson v. Racine,* 65 Wis. 306 (27 N. W. 58).   This particular plat lies just outside the area of paved streets, and it is not an unreasonable expectation that in the comparatively near future the property owners and residents of the addition will be asking that their own streets may be thus improved.   Municipal improvements cannot well be all constructed at once.   In the orderly course of events, it would seem that sewering should precede paving; at any rate, the giving of such precedence would not be an abuse of municipal authority.   Aside from an apparent need of an improved outlet (a need which the city is bound to remedy), there seems no reason to doubt that this work has been reasonably well done; that its benefits are general throughout the plat; and that all the property should contribute to the expense in fair and ratable proportion.   The assessment of $32 per lot is not apparently excessive, and we think it should be permitted to stand.   It follows that the decree below must be reversed, and the special assessments appealed from confirmed.—*Reversed.*