IN RE PAVING FLOYD PARK ADDITION.

IN RE APPEAL OF HAWKEYE LAND COMPANY.

**MUNICIPAL CORPORATIONS:** Public Improvements—Waiver of 25 **Per Cent Limitation.** One who, in order to induce the public authorities to pave the streets abutting upon his property, waives the benefit of the statute which prohibits assessments in excess of 25 per cent of the value of the property, must be held to have consented that his property should be charged with its due proportion

of the reasonable cost of the improvement, no matter how much such cost *exceeds the value of the property or the resulting benefits.*

*Appeal from Woodbury District Court.*—Miles W. Newey, Judge.

## January 8, 1924.

## Rehearing Denied April 4, 1924.

On May 3, 1919, the owners of property abutting upon and adjacent to certain named streets of Sioux City presented to the city council a petition for the paving of said streets, and that the cost of such improvement be assessed to the property, as by law provided. This petition was signed by the appellant in this case, and contained a provision or statement, as follows:

"We further agree to waive all claims for any excess of the paving over and above 25 per cent of the actual value of the property."

This petition was acted upon favorably by the council, and the paving was constructed. The record discloses no contest by any property owner and no irregularity or jurisdictional defect in the proceeding, and no objection was made thereto until the matter of spreading the assessments of the cost upon the property subject to such charge came on for consideration. The schedule of assessments made by the engineer and approved by the council included some 17 or more lots belonging to the appellant, and represented an aggregate of $7,591.54. Appellant objected thereto on the following grounds: (1) The assessments exceed the value of the lots; (2) they were not made according to the benefits conferred; (3) they were levied according to area, without regard to benefits as compared with other lots in the district; (4) they are not distributed ratably and proportionately with the benefits; and (5) the city owns a strip of ground within the paving district wholly omitted from the assessment. These objections were overruled, and the land company appealed to the district court from such ruling. On the hearing below, appellee offered the testimony of a real estate dealer and of one of its managing officers to the effect that cer-

tain of the lots in question, owing to their elevation above the street level, were of very little value; that some of them received no actual benefits from the paving; and that the benefits to others of said lots were largely overassessed.   No other witnesses were examined.   Upon consideration of this showing, the trial court entered a judgment or decree setting aside and canceling entirely the assessments on eight of the described lots, and materially reducing the charge upon the remaining lots. From this ruling the city of Sioux City has appealed.— *Reversed.*

*Fred H. Free* and *E. G. Smith,* for appellant.

*Milchrist, Jepson, Pitkin & Jepson,* for appellee.

The following opinion was written by the late Justice Weaver, and is now adopted as the opinion of the court.

Per Curiam.—It is to be kept in mind from the outset of this discussion that, aside from the alleged excess and inequality of the special assessments, the authority of the council to order the paving and cause the work to be done stands unchallenged. Except in the respect mentioned, the regularity of the proceedings is unquestioned.   No complaint is made of the quality of the work, or that the paving as made is anything other than was contemplated by the petitions therefor.   The sole ground on which the payment of the assessment is contested in this court is that it is excessive and unequal, and to that phase of the inquiry we now direct our attention.   It is doubtless true that the situation and topography of the property in question are such as to unfavorably affect its value and to render it more or less difficult of access, but it was platted into city lots within the taxing zone of the paving district, and was doubtless purchased and held by the land company, awaiting the time when, by the growth of the city and by the unearned increment arising from its evolution, such lots would acquire a value to the profit of their owners.   With full knowledge of the situation and of the condition and nature of this property, and doubtless with the purpose of hastening such development and accelerating the harvest of anticipated profits, the appellee company not only

solicited and petitioned for the paving of the streets, but, as an inducement to such action, voluntarily and in writing waived the benefit of the statute which limited to 25 per cent the liability of its property to special assessment for that purpose. As reasonable men, of ordinary judgment and experience, they knew that it was not only likely, but morally certain, that the cost of the pavement which they petitioned for would be greatly in excess of the 25 per cent limit, and expressed their willingness and desire to assume that burden, in consideration of an improvement which they believed would be a factor in promoting the value of their holdings in that taxing district. Having obtained the desired improvement, they are estopped by the most elementary principles of equity from claiming protection or immunity under that statute. This estoppel did not, however, inhibit their right to insist that their assessments should not be unreasonably excessive, if such abuse of power be shown. The jurisdiction and authority of the council having been regularly invoked and exercised, the burden of impeaching the assessments is upon the appellee. This the appellee seeks to establish by the assertion that the tax levied is (1) greater than the actual value of the property, and (2) greater than the special benefits conferred; and in support of this contention, they produce the testimony of two witnesses who state their estimate or opinion of the value of the several lots with and without the improvement. This claim and the arguments of appellee's counsel proceed upon a mistaken theory of the principles underlying the law governing special assessments. True, such charges are to be supported, if at all, on the theory of special benefits to the property on which the burden is laid; but it is not true, as appellee appears to think, that, to sustain the legality of such tax, the resulting benefits must be immediately reflected in the present market value of the taxed premises. This court has said:

"The test is not necessarily whether the market value has been increased, but whether the improvement has enhanced the actual value or worth of the property." *Camp v. City of Davenport,* 151 Iowa 33, 38.

Again, we have said:

"Increase or decrease in present market values is not a decisive test upon the question whether a property is benefited.

* * * Future prospects and reasonable anticipations of the city's growth, expansion, and consequent needs may also be considered." *Bell v. City of Burlington,* 154 Iowa 613.

In *In re Jefferson Street Sewer,* 179 Iowa 975, we held that the act of the city in ordering the construction of a sewer raises a conclusive presumption that the legal zone of the improvement will be benefited in some degree, and that the decree of the trial court, on appeal, wholly canceling an assessment on the theory that no benefits have been conferred, will be reversed. In *Chicago, R. I. & P. R. Co. v. City of Centerville,* 172 Iowa 444, the objection to assessment for paving was identical with the one presented in the instant case, and there, as here, the property owner insisted that there were no resulting benefits, and we said:

"Speaking generally, there is a fair presumption that all real estate receives some degree of benefit from the permanent improvement of a street upon which it abuts. It is upon such presumption that the whole system of special assessments for local improvements is justified and sustained. Acting upon such presumption, city councils have been clothed with a certain degree of legislative power to determine when it is expedient and proper to pave any given street or streets, and to provide, within certain limitations, how the cost thereof shall be defrayed. This discretion includes the authority to assess such cost upon the abutting property, in proportion to the benefits accruing to such property. It follows, we think, that the order of the city council, acting in accordance with the statute for the paving of the street and assessment of the cost upon abutting property, is not subject to control or interference by the courts; and (still assuming that the provisions of the statute have otherwise been observed) the question to be considered, upon an appeal from the assessment made, is whether the burden has been distributed or apportioned upon the several items of abutting property with due reference to the benefits they derive from the improvement. In other words, the action of the council, in ordering the pavement and providing that the cost shall be assessed upon the abutting property, is a legislative determination that the improvement is expedient and proper and that the property abutting upon the improvement will be benefited thereby; and such

determination cannot be set aside or overruled in a judicial proceeding. This is not inconsistent with the right of the property owner to question and have determined the regularity of the procedure by the council and the equality of the assessment. In other words, while the owner of abutting property may object that it has been over-assessed, he cannot, if the proceedings have otherwise been regular, be heard to say that it is not liable to be assessed at all. *Northern Pac. R. Co. v. Seattle*, 91 Pac. 244, and other authorities there cited. See, also, *Spence, v. Merchant*, 125 U. S. 345; *Paulsen v. Portland*, 149 U. S. 30.''

Further along in the same opinion, we said:

''The argument proceeds upon a mistaken conception of the effect of the statute which provides for assessments in proportion to benefits. It certainly does not mean that, before such an assessment can be levied and enforced, the city must be able to show that, by reason of the paving, the abutting property has been advanced in market value to the extent of the assessment, or point out in detail the specific way and manner in which the requisite benefits are to be realized in the future. Were such to be the rule, few, if any, schemes of local improvement at the expense of the property immediately affected could ever be accomplished. It is natural for the average property owner to resent the burden thus laid upon him, and he easily persuades himself that the thing for which he is asked to pay is a detriment, rather than a benefit, to his land; and ordinarily it is not difficult for him to find plenty of sympathizing neighbors who will unite in supporting his contention. Indeed, the benefits to be derived in such cases are ordinarily not instant upon the inception or completion of the improvement, but materialize with the developments of the future. They are none the less benefits because their full fruition is postponed, or because the present use to which the property is devoted is not of a character to be materially affected by the improvement.''

The same proposition is well supported by the Supreme Court of the United States in *Louisville & N. R. Co. v. Barber Asph. Pav. Co.*, 197 U. S. 430, 433, where it is said:

''The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land, indeed whether it is a

benefit at all, is a matter of forecast and estimate. In its general aspects at least, it is peculiarly a thing to be decided by those who make the law.''

The man who plants a tree or sows a field of grain does not reasonably expect to immediately pluck fruit from such planting, or to forthwith reap a well ripened harvest; and the speculator who, holding unimproved city lots, procures the paving of adjacent streets does not ordinarily reasonably expect immediate profits therefrom. Such improvement is but one item of the many factors from a combination of which his cheap or comparatively worthless lots will gradually but surely appreciate in value. The country is full of cities in which this sort of development and transformation is taking place, where hills are cut down, low places filled, rocks blasted, and property of little value in its native condition is made ready for desirable homes or the needed sites of thriving shops and factories. Not least in contribution to such results are well improved streets and public ways. It may be, and indeed is, difficult or impossible to fix or state any precise value or standard for the benefit conferred by the paving, as distinguished from other benefits arising from other concurring improvements; but that constitutes no reason for condemning assessments regularly made by the city council, where fraud is neither charged nor proved. If it be true that the assessment on some of these lots is greater than their value without the improvement, it by no means follows that it is excessive or unequal. If such property is worthless, or of merely nominal value, it may well be that the street improvement will be one of the means or agencies by which these inferior lots will be utilized and given real value.

In this connection it may be noted that, so far as this record shows, the land company is the only property owner contesting the assessment, and there is no evidence tending to show how this particular assessment compares with that levied on other property, or what was the aggregate amount of the assessment upon the district or zone subjected thereto; so this court is left without any data on which to consider the complaint that there is any essential inequality or disproportion in the levy. In asking for the paving, and that its cost be assessed upon the property within the legal zone, as fixed by the statute, and

waiving protection of the statutory limit, appellee must be held to have consented that its property should be charged with its due proportion of the cost of the improvement, no matter how much such cost exceeded the value of the property or the resulting benefits.  It is in the nature of a pledge or voluntary dedication of the property of the petitioners to the promotion of the improvement to the extent of the reasonable cost of the paving.  Of course, as we have already said, this did not bind the appellee to submit without complaint to an assessment tainted with fraud, or to a tax which was in excess of the necessary and reasonable cost of the improvement.  But no such objection was made, and it must be presumed that the total tax levied was no greater than was reasonably and properly incurred in performing the work; and this amount the petitioners in advance had consented that their property should bear.  If that cost was greater than the appellee anticipated, such fact affords no reason for abating or reducing the tax.  See *North View Land Co. v. City of Cedar Rapids,* 185 Iowa 1032, 1036; *Gilcrest & Co. v. City of Des Moines,* 157 Iowa 525.

No sound reason can be assigned for relieving the appellee or its property from the burden so voluntarily invited and assumed.  The appeal of the city must be sustained, and the decree of the district court is—*Reversed.*