W. C. DIESING et al., Appellees, v. CITY OF MARSHALLTOWN et al., Appellants.

**MUNICIPAL CORPORATIONS:** Sewers—Assessment on Basis of Area With Resulting Inequality. Lands which have adequate natural drainage are, nevertheless, subject to special assessment for a storm sewer which disposes of waters which are the common enemy of both the property owner and the *public in general;* but an assessment levied solely on the basis of *area*—levied regardless of whether the lands are *low* or *high* or *remote* or *nonremote* from the sewer in question—may result in such inequality as to demand a reduction on the relatively high and remote lands.

Headnote 1: 28 Cyc. pp. 1156, 1161.

*Appeal from Marshall District Court.*—JAMES W. WILLETT, **Judge.**

MAY 12, 1925.

THE lower court, on appeal from the action of the city council, reduced special assessments levied for the construction of a storm sewer. The city appeals.—*Modified and affirmed.*

*F. E. Northup* and *Robert E. Johnson,* for appellants.

*G. A. Mote,* for appellees.

VERMILION, J.—This is an appeal by the city from the decree of the court below reducing special assessments levied by the city council for the construction of a storm sewer upon lots and unplatted ground belonging to the appellees, and lying within an established sewer district.

No question is raised as to the regularity or legality of the proceedings of the council preceding the assessment, and the only question presented is as to the amount of the several assessments. The sewer district covers a total area of some hundred and sixty acres, including streets and alleys. The area subjected to assessment to pay the cost of the sewer, consisting of platted lots and some unplatted tracts, is about 100 acres. The assessments spread upon these lots and tracts by the city council were in proportion to their area, and without regard to their elevation or location. There is little dispute in the evidence. The sewer is a storm sewer, designed to carry surface water only. Water can enter it, with a single exception, only through catch basins located in streets or alleys. The line of the sewer, generally speaking, follows a depression in the land, with laterals extending on either side. The slope of the land within the district is toward this depression, which extends along the central portion of the district. Prior to the construction of the storm sewer, the only means of escape for the waters of rainfall or melting snows was over the surface of the ground toward and along the depression. The low ground was wet, and water stood upon it at times. Some of the streets within the district were paved, and the construction of the paving had interfered with the natural drainage of the water from the higher to the lower land. Some of the unpaved streets were without adequate drainage, and were practically impassable at times, for that reason.

All the land within the district, aside from the lack of adequate drainage of surface water, is suitable, in location and accessibility, for residence purposes. While many of the lots and practically all of the unplatted tracts within the district are of relatively higher elevation, and were not directly affected by any lack of drainage of the water that fell upon them, it is plain, we think, that they were all, to some extent, more or less injuriously affected by the inadequate drainage of the low portions of the district,—depending, of course, upon their location, their proximity to the low ground, and the character of the abutting streets.

It is, of course, conceded that the assessment upon any particular lot or tract must be in proportion to, and not in excess of, the special benefits conferred, and not in excess of 25 per cent of the actual value of the lot or tract at the time of the levy. Section 792-a, Code Supplement, 1913 (Section 6021, Code of 1924).

That some special benefit was conferred upon the lots and tract in question must be taken as admitted, in the absence of an appeal by the property owner from the assessment as made in the court below. See, also, *Chicago, R. I. & P. R. Co. v. City of Centerville,* 172 Iowa 444; *Dickinson v. City of Waterloo,* 179 Iowa 946; *In re Jefferson Street Sewer,* 179 Iowa 975.

A storm sewer designed to carry away surface water only is obviously intended, not alone for the private convenience of lot owners, but for the comfort and safety of those within the district served, and the public generally. It is well settled that such a benefit to all the property within the district is one that is within the purview of the statute, and that the mere fact that a particular lot lies so high that it has adequate natural drainage for surface water is not alone determinative of its liability to assessment. The language of Justice Weaver in *Bell v. City of Burlington,* 154 Iowa 607, is pertinent. He said:

"Nor is the alleged elevation of these lots above the general level a matter of decisive importance. A sewer system is intended, not only for the private convenience of the lot owners, but for the comfort and safety of the public as well. It affords, not only a means of drainage from the surface of privately owned lots, but drainage for cellars and for general sanitary

purposes.  It drains the public streets, removes stagnant pools which breed discomfort and disease, promotes general cleanliness, and in many other ways adds to the desirability, comfort, and real value of all property in the neighborhood which is thus served.  If here and there a lot or block chances to have such elevation that the waters thereon soon flow off, then such waters are cast upon adjacent property or into the streets, to become a 'common enemy' until they find discharge into some connection with the public drain or sewer.  The improvement of the streets, the general removal of surface waters, the facilities for carrying away waste matter which would otherwise be cast upon the surface to poison the soil and pollute the atmosphere are benefits in which every property owner has some share; and the obligation of mutual burden bearing which rests upon the congested population of cities and towns requires that the expense of making them convenient, comfortable, and healthful shall, so far as practicable, be equitably distributed upon all property enjoying the benefit of municipal improvements.''

It is also a firmly established doctrine that it is not alone present or immediate benefits or enhancement of the value of property that are to be taken into consideration in arriving at the benefit to be derived from a permanent public improvement. *Bell v. City of Burlington,* supra; *In re Jefferson Street Sewer,* supra; *In re Paving Floyd Park Addition,* 197 Iowa 915; *In re Appeal of Gilcrest Co.,* 198 Iowa 162.

In the *Floyd Park* case, we quoted approvingly the language of the Supreme Court of the United States in *Louisville & N. R. Co. v. Barber Asphalt Pav. Co.,* 197 U. S. 430 (49 L. Ed. 819), as follows:

''The foundation of this familiar form of taxation is a question of theory.  The amount of benefit which an improvement will confer upon particular land,—indeed, whether it is benefited at all,—is a matter of forecast and estimate.  In its general aspects, at least, it is peculiarly a thing to be decided by those who make the law.''

Subject to the statutory limitation that the assessment against any particular tract shall be in proportion to, and not in excess of, the special benefits conferred, nor in excess of 25 per cent of its value, the cost of the improvement is, so far as these

limitations will permit, to be paid from special assessments upon the benefited property; and the cost of the improvement is an essential factor in arriving at the amount of a particular assessment.

As we have said, the council distributed the total cost of the improvement to the different tracts in the district in proportion to their area. This resulted in an assessment against four of appellees' lots of $39.63 each, which the lower court reduced to $5.00; against two, of $59.45 each, which was reduced to $8.00; against four, of approximately $30 each, which was reduced to $4.00; and $946.76 against the unplatted tract, reduced to $107.

The appellees testified that the lots were worth from $1,000 to $1,200 each, and that the unplatted tract of 2.96 acres was worth $1,000 per acre. The latter has been used as a truck garden. All of this land slopes toward the depression in the central part of the district, and a lateral line of the sewer crosses the block in which the lots lie, with catch basins in the street on either side. The unplatted tract is farther from the sewer and catch basins than the lots, its nearest point being a block from the sewer and across a paved street. The sewer does not affect the natural drainage from the land. The water falling upon it must and does flow off it before it can reach the sewer. There is access to the property by paved streets. The benefit is such only as is conferred by the removal of surface water from the district generally. Without extending this opinion by reciting the testimony as to general conditions in the district before and after the construction of the sewer, we content ourselves with saying that, while the lots and tract in question were not so greatly benefited by the improvement as other lower-lying lots in the district, yet, in our opinion, the special benefits received were materially greater than the proportion of its cost assessed against them by the lower court. In *Smith v. City of Marshalltown*, 197 Iowa 85, a case involving similar facts, we refused to interfere, at the instance of the city, with an assessment fixed by the district court at one third of the assessment made by the city council in the same way that the instant assessment was made.

We reach the conclusion that an assessment upon each of

the lots equal to one third, and upon the unplatted tract equal to one fourth of the assessments made by the city council, would not be in excess of just proportions of the cost of the improvement or the special benefits conferred; and it is so ordered. It follows that the decree below must be, and is,—*Modified and affirmed.*

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.