**SPENCER SHOPPING CENTER, INC.,**
**Appellant,**

v.

**CITY OF SPENCER, Iowa, Appellee.**

**No. 55031.**

Supreme Court of Iowa.

Sept. 19, 1972.

James, Greer, Nelson & Bertell, Spencer, and Peters, Campbell & Pearson, Council Bluffs, for appellant.

Ronald R. Barrick, Spencer, for appellee.

UHLENHOPP, Justice.

We are required here to decide whether a special assessment levied on a shopping center tract for a storm sewer was in accordance with the special benefits conferred.

Spencer Shopping Center, Inc. acquired 16.316 acres of land in Spencer, Iowa, which it improved with buildings having approximately 100,000 square feet of roof, a hard-surfaced parking area of 57,110 square yards, and a smaller grassed area. The soil where the Shopping Center was built was porous in nature.

A storm sewer district was established which consists of about 385 assessable acres, including the Shopping Center tract. The land in the area is relatively flat. Such slope as exists is to the southeast. The Shopping Center tract is near the highest elevation, in the northwest part of the district. The storm sewer runs along most of the west side of the Shopping Center tract, along the south side, and for 437 feet along the southeast side. The sewer cost $727,734, of which 35% was paid from Spencer's sanitary fund and 65% was levied by Spencer on the benefited land in the district.

The Shopping Center tract was assessed $32,050. The Center objected before the city council that the assessment is excessive. The objection was overruled. The Center then appealed to district court where, after trial, its objection was again overruled. Hence its present appeal to us. See Code, 1962, §§ 391.89, 391.90 (references are to the Code of 1962, the latest Code at the time of the events).

At trial in district court, two witnesses testified, one for Spencer and the other for the Shopping Center. Both were engineers. Spencer's engineer, a member of a

consulting engineering firm, had extensive experience, considerably more than the Shopping Center's engineer. In endeavoring to arrive at the benefit from the sewer to the Shopping Center tract, both witnesses used the same factors: improvement factor, frontage factor, elevation factor, and area factor. They held the same opinion as to the improvement factor but differed as to the other three factors. The opinion on benefits of Spencer's engineer was this:

| | |
|---|---|
| Improvement factor | $ 1,827.00 |
| Frontage factor | 2,300.00 |
| Elevation factor | 3,806.00 |
| Area factor | 41,374.00 |
| Total | $49,307.00 |
| Assessment at 65% | $32,050.00 |

The opinion of the Shopping Center's engineer was this:

| | |
|---|---|
| Improvement factor | $ 1,827.00 |
| Frontage factor | 1,725.30 |
| Elevation factor | 3,082.58 |
| Area factor | 22,396.24 |
| Total | $29,031.12 |
| Assessment at 65% | $18,870.00 |

We need not consider the improvement factor, as the evidence is simply against the Shopping Center's present contentions. Spencer's engineer developed the assessments, and he thought of course that the allocation of $1,827 is fair. The Shopping Center's engineer testified:

> The next factor to be considered in arriving at a fair assessment is the "improvement benefits" which was assessed by the city's engineers. This amount originally was $1,827.00 [before reduction by 35% paid by Spencer], and I feel that from an engineering standpoint this figure is fair.

We are thus concerned with the other three factors.

The governing statute is § 391.48 of the Code, which provides in pertinent part:

> When any city council levies any special assessment for any public improve-

ment against any lot, such special assessment shall be in proportion to the special benefits conferred upon the property thereby and not in excess of such benefits.

See also § 391.42.

■ Assessments made by a city are presumed to be correct and the burden is on the objector to prove otherwise. Goodell v. City of Clinton, 193 N.W.2d 91 (Iowa). The ultimate question is whether the amount levied on a tract constitutes its fair proportion of the total cost. Rood v. City of Ames, 244 Iowa 1138, 60 N.W.2d 227.

I. *Frontage Factor.* Spencer's engineer testified that land fronting on a street containing a storm sewer receives more benefit than other land in the district, and that land on the side of the street where the sewer runs receives more benefit than land on the opposite side of the street because of ease and lower cost of connecting to the sewer. He thought, however, that the whole factor of frontage is not entitled to great consideration. Hence he allocated less than 10% of the overall cost to that factor. He assigned $3 per front-foot to abutting parcels on the "near side," and $1.50 per front-foot to parcels across the street—the "far side." But he did not compute footage mechanically; he made equitable adjustments for the size and shape of parcels. In addition, if the sewer ran on both sides of a parcel, he assigned the average footage of the two sides so as not to double the factor. His adjustments were aimed at causing the factor to reflect the actual benefit received by a parcel by virtue of its abutting the sewer, and he applied his system consistently and not just to the Shopping Center tract.

■ A front-foot factor may be employed in ascertaining benefits from storm sewers, but it must not be applied arbitrarily. Fairness may require that the size and

shape of parcels and actual proximity to the sewer be considered within the frontage factor itself. Moreover, if factors other than frontage affect benefits, they must be given weight. Rood v. City of Ames, 244 Iowa 1138, 60 N.W.2d 227; Benshoof v. City of Iowa Falls, 175 Iowa 30, 156 N.W. 898; Iowa Pipe & Tile Co. v. Callanan, 125 Iowa 358, 101 N.W. 141; 48 Am. Jur. Special or Local Assessments § 67 at 622–624; 63 C.J.S. Municipal Corporations § 1430 at 1218–1223. Upon consideration of the evidence here, we conclude that the factor for frontage was applied in accordance with these principles and that the Shopping Center has no just ground for complaint as to this factor.

■ II. *Elevation Factor.* High land naturally receives less benefit from a storm sewer than low land. The highest land receives only its own water, but low land receives its own water and water from high land. Hence an elevation factor is a proper consideration in ascertaining benefits from a storm sewer.

The portion of benefits to be allocated on the basis of elevation alone varies with the terrain of districts. Steep slopes cast off more water than gently sloping land. Hence the allocation to the elevation factor must be greater in more sloping districts than in the flatter ones. The land in this district has varying elevations, but is relatively level.

Spencer's engineer developed a formula for the terrain in this district which allocated about 13% of the total cost of the sewer to the factor of elevation. Broken down, this resulted in an index figure of $204.98 per acre. The engineer then developed a multiplier for each parcel, based upon its particular elevation. The highest parcel had the lowest multiplier (zero) and the lowest parcel had the highest multiplier. The formula was applied to the Shopping Center tract and uniformly throughout the district, except for some

railroad right-of-way. That right-of-way was built with its own drainage. Hence, as with the highest land, no actual burden could be demonstrated from elevation itself —the right-of-way was built to cast off water rather than receive it. Of course, the railroad right-of-way was assessed for its own water on the basis of the area factor, which accounted for 73% of the total cost of the sewer.

We have examined the decisions the Shopping Center cites on this factor, but they are not analogous to this case. This is not a case involving low lands with marshes or hilly land. The allocation is one of judgment and the evidence does not overcome the presumption in favor of the assessment. We cannot sustain this objection of the Shopping Center. See Bell v. City of Burlington, 154 Iowa 607, 134 N.W. 1082; Diesing v. City of Marshalltown, 199 Iowa 1270, 203 N.W. 693.

■ III. *Area Factor.* Spencer gave the greatest consideration to the area of the parcels—about 73% of the total cost— and the principal controversy centers around this factor. Area is a proper consideration in storm sewer assessments. Diesing v. City of Marshalltown, 199 Iowa 1270, 203 N.W. 693.

To ascertain the size of the sewer which is necessary for the district, the amount of run-off of water in the area had to be ascertained. In this connection a prime consideration is "coefficient of run-off" of each tract, determined by the pervious or impervious nature of the surface of the tract.

The coefficient of run-off of each tract was ascertained by considering the nature of the tract and applying regular engineering tables and the engineer's judgment from experience. Residential property was normally assigned a coefficient of .4 (40% run-off), other tracts which were more impervious were assigned .6 (60% run-off),

and the Shopping Center tract and some others were assigned .8 (80% run-off). In substance, the coefficient of a tract was multiplied by a uniform cost figure, and the result was multiplied by the number of acres in the particular tract. A large tract was assigned more of the cost than a small tract with the same coefficient of run-off; and a tract with a high coefficient of run-off was assigned more of the cost than a tract of the same size with a low coefficient.

The Shopping Center's basic complaint as to this factor is that its tract is in the higher part of the district and should not have been assessed such a large sum based on area. The complaint, if valid, must mean that one or more of the three components involved in the area factor is erroneous: size of tract, coefficient rate, or the figure 73% allocated to the overall area factor.

The size of the Center's tract is known and was applied in the computations. No error appears here. Nor has application of an incorrect size of another tract been shown which would cast an extra burden on the Center's tract.

The coefficient of run-off of .8 for the Shopping Center tract was abundantly proved, based on the impervious roof and parking lot of about 613,990 square feet. Indeed, the evidence discloses .9 or .95 might have been employed. Errors in coefficients applied to other tracts were not shown.

This leaves the figure 73% allocated to the overall area factor. Is that proportion excessive? The city's engineer and the city council thought not. We believe the presumption of validity attending the assessment is not overcome on this point.

■ As with the elevation factor, the proportion of total cost to be allocated to the area factor varies with terrain. When the land of a district slopes substantially so that upper land naturally sheds most of its water and lower land receives it, the proportion of total cost assigned to the elevation factor must be substantial and the proportion assigned to the area factor must be less than otherwise. Such was the situation in Rood v. City of Ames, 244 Iowa 1138, 60 N.W.2d 227. The converse, of course, is also true, and the converse is the situation which exists here. This district is quite flat. No evidence appears that any lower land had a water problem prior to construction of the sewer, or that marshes or ponds existed—such as the ponding in the Rood case. The percentage to be assigned to the area factor is again a matter of judgment, and we cannot overturn the council's decision under the evidence here.

■ Moreover, this case presents a major consideration not found in the cases cited by the Shopping Center—the large impervious area created by the Shopping Center itself, where porous soil previously existed. When the Center originally contemplated construction, it was confronted with the problem of the large increase in water it would cast on neighboring lands by changing the surface of its tract. The Center considered various private drainage systems, but ultimately the public storm sewer district was established and the Center's potential water problem was solved. The sewer had to be considerably larger because of the Center's change of its tract from porous ground to mostly impervious surface. We think this consideration lends support to the council's judgment. We cannot uphold the Center's attack on the area factor.

We have carefully considered the Shopping Center's other arguments, but they do not change the result. On the whole case, we conclude that the Shopping Center's tract was assessed its fair proportion of the cost of the improvement.

Affirmed.

All Justices concur.